## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| **BOSTON POST PARTNERS II, LLP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil No.** |
| **v.** | ) | **15-13804-FDS** |
| | ) | |
| **MICHAEL PASKETT; TODD HINES;** | ) | |
| **CHARLES NEWMAN; NOPAL CACTUS** | ) | |
| **FARMS, LLC; and GOLDEN SANDS** | ) | |
| **PARTNERSHIP,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS'
## MOTIONS TO DISMISS AND MOTION TO TRANSFER

**SAYLOR, J.**

This is an action arising out of a failed business arrangement concerning the development of farmland in Arizona. Plaintiff Boston Post Partners II, LLP ("BPP") has filed a nine-count complaint against defendants Michael Paskett; Todd Hines; Charles Newman; Nopal Cactus Farms, LLC; and Golden Sands Partnership alleging, among other things, breach of contract and fraud.

Defendants have filed three sets of motions, all but one concerning personal jurisdiction or venue. Defendant Paskett has moved to dismiss the entire action for improper venue under Fed R. Civ. P. 12(b)(3), or, in the alternative, to transfer the case to the District of Arizona under 28 U.S.C. § 1404(a). He has also moved to dismiss Count Six under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Defendant Hines has moved to dismiss the entire action for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and improper venue under Fed. R. Civ. P.

12(b)(3), or, in the alternative, to transfer the case pursuant to § 1404(a).  Defendants Newman, Nopal, and Golden Sands have moved to dismiss the entire action for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

For the following reasons, the Court will grant Paskett's motion to dismiss Count Six; transfer the matter to the District of Arizona under 28 U.S.C. § 1404(a); and deny the motions to dismiss for lack of personal jurisdiction or improper venue as moot.

## I.   <u>Factual Background</u>

Plaintiff Boston Post Partners II, LLP ("BPP") is a limited liability company registered in Delaware.  (Pl. Opp. 1).[1]  All of its members are residents of Massachusetts.  (*Id.*)

Defendant Michael Paskett resides in Idaho, defendant Todd Hines resides in the state of Washington, and defendant Charles Newman resides in Arizona.  (*Id.* ¶¶ 3-5).  Defendant Nopal Cactus Farms, LLC is a limited liability company, apparently organized under the laws of Arizona.  (*Id.* ¶ 8).[2]  Defendant Golden Sands Partnership is a partnership organized under the laws of Arizona, where it has its principal place of business.  (*Id.* ¶ 9).  Defendant Newman is the general partner of Golden Sands.  (*Id.*).  Each member of Nopal and each partner of Golden Sands resides in Arizona.  (*Id.* ¶¶ 8-9).  It appears that Newman controls Nopal and Golden Sands.

At the beginning of 2015, Nopal owned 160 acres of farmland in Maricopa County, Arizona.  (*Id.* ¶ 15).  Arizona homestead rights provided Nopal the opportunity to lease surrounding state-owned land, at a fixed rate, for use as farmland.  (*Id.* ¶ 16).  Golden Sands

---

[1] The amended complaint alleges that BPP is a "limited liability partnership registered under the laws of Massachusetts."  (Am. Compl. ¶ 2).  In its opposition memorandum, BPP explains that statement is incorrect and that it is actually an LLC registered in Delaware.

[2] The amended complaint alleges that Nopal is "incorporated" in Arizona, although as an LLC it is presumably not incorporated at all.  (Am. Compl. ¶ 8).

exercised that right, on behalf of Nopal, leasing an additional 3,502 acres of state-owned land (the "Leasehold Lands").  (*Id.* ¶17).  Nopal also had the right, again due to Arizona homestead rights, to lease an additional 12,000 acres of surrounding state-owned land (the "Additional Leasehold Lands").  (*Id.* ¶ 18).[3]

According to the complaint, Paskett and Hines own and control an entity called GSJV. (*Id.* ¶ 23).[4]  On February 13, 2015, GSJV contracted to purchase Nopal's 160 acres and to assume Golden Sands's lease for the Leasehold Lands for $10,270,000.  (*Id.* ¶ 23).[5]  Hines purportedly made a "good faith payment" of $350,000 on behalf of GSJV.  (*Id.*).  According to the complaint, the closing date for the transaction was set for April 30, 2015.  (*Id.* ¶ 23).[6]

Paskett and Hines then "contacted BPP, with whom both had prior business dealings, to solicit its involvement to raise capital to purchase and lease the Nopal Lands, Leasehold Lands, and Additional Leasehold Lands and to develop the lands for agriculture."  (*Id.* ¶ 24).

On February 23, 2015, Paskett (as "representative" of GSJV) executed a Letter Agreement with BPP.  (Pl. Opp. Ex. 1).[7]  The Letter Agreement defined "GSJV" as "Michael Paskett, John Boley, & Doug Larsen."  (*Id.*).  It provided that "BPP will identify and source third party capital on an exclusive basis for GSJV for the purpose of acquiring and developing

---

[3] According to the complaint, the Nopal Lands and the Leasehold Lands had an irrigation system in place, and had been used as farmland prior to 2012, although the land was fallow.  (Am. Compl. ¶ 19).

[4] The complaint does not indicate whether GSJV is a formal entity, such as a corporation or a partnership.

[5] The amended complaint contains two paragraphs numbered "23."

[6] Newman contends that the closing date was March 31, 2015, and that it was never extended.  (Newman Aff. ¶ 6).

[7] The Letter Agreement is dated February 18, 2015, and was executed by the managing director of BPP on February 24.

farmland in Arizona . . . starting with the Wilcox and Golden Sands properties." (*Id.*).[8] An existing Massachusetts corporation would become the "Acquisition Vehicle"; the Acquisition Vehicle would be owned by members of GSJV and BPP. (*Id.*). The Acquisition Vehicle would "make best efforts to acquire via merger the assets of the Wilcox property and the Golden Sands property." (*Id.*). Although the Letter Agreement is not entirely clear, it appears that GSJV and BPP would share equally in any equity of the Acquisition Vehicle that was not held by third-party capital investors. (*See id.*).

The agreement stated that its terms were "enforceable" in Massachusetts and "subject to the laws of Massachusetts." (*Id.*). The agreement further provided that it "shall continue for [75] days after the date of execution" (that is, until May 10, 2015) and "shall terminate" unless both parties extend the agreement in writing or the closing date of the property acquisition is extended. (*Id.*; Am. Compl. ¶ 28).

Hines did not sign the Letter Agreement and was not mentioned in it. However, according to the complaint, Paskett, "on behalf of [ ] Hines, orally discussed with BPP that [ ] Hines would participate in the partnership and joint venture." (*Id.* ¶ 30). It alleges that "[u]pon information and belief, defendants Paskett and Hines and Boley and Larsen agreed that defendant Hines would be an equal partner with defendant Paskett and that Boley and Larsen would not be partners" and that Hines "was recognized as a fully active participant in the partnership and joint venture by all parties." (*Id.* ¶ 30). According to the complaint, "Hines did not want his name listed on the Agreement because he was in the process of a divorce." (*Id.*).[9] The Letter Agreement does not contain an integration clause.

---

[8] The "Wilcox" property is not identified in the Letter Agreement or the complaint. The complaint refers to the "Wilson" property, but does not describe it. (Am. Compl. ¶ 26).

[9] Hines denies that Paskett was his agent or had any authority to contract on his behalf. (Hines Aff. ¶ 11).

According to the complaint, over the following months, BPP engaged experts and Arizona state regulators, and developed a plan for potential investors that detailed the homestead rights, water rights, farming potential, and the potential demand for agricultural products. (*Id.* ¶ 32). In addition, it developed marketing materials and began meeting with investors, and "worked to raise $25 million to $28 million in capital," which was "sufficient" to make the purchase and develop the property. (*Id.* ¶ 38). BPP projected that the Arizona land could be developed and sold for up to $175 million in the next three to five years, and it estimated it would receive up to $30 million as a result. (*Id.*).

According to the complaint, throughout this period, Paskett, Hines, and Newman had "many communications with BPP in Massachusetts by telephone, text message, and email on their own behalf and on behalf of entities that they owned and/or controlled." (*Id.* ¶ 13).[10]

On March 26, 2015, the Stahl Hutterian Brethren, a nonprofit apostolic corporation, contacted Paskett and offered him $550 per acre per year, for a term of six years, to lease the lands and leaseholds GSJV had agreed to purchase from Nopal and Golden Sands. (*Id.* ¶¶ 11, 43). Paskett told BPP about the offer. (*Id.* ¶ 43). Hines appears to have been aware of the offer, as well. (*Id.* ¶ 46).

Newman told Paskett that he would prefer to lease the Nopal-owned property, rather than sell it. (*Id.*). Paskett informed BPP of Newman's preference in an e-mail dated April 13, 2015. (*Id.*). In the same e-mail, somewhat ambiguously, Paskett told BPP:

> This is a crazy turn of events I realize. Bear with me though. I'm going to close it. Then we can run down the road together without worry.

---

[10] Newman contends that he never initiated any contract with BPP. (Newman Aff. ¶ 16). He further contends that he had limited contact with BPP, consisting of at least two telephone calls, receipt of a letter and an e-mail, and a face-to-face meeting in Phoenix. (*Id.* ¶¶ 7, 9, 10, 12, 13).

Hines contends that while "in or around" Washington state he participated in at most three telephone calls with BPP, none of which he initiated. (Hines Aff. ¶ 13). He also contends that he never traveled to Massachusetts in connection with the transaction at issue (or any other business transaction). (*Id.* ¶ 7).

(*Id.*).  According to the complaint, Paskett "continued for the following weeks to make similar representations – that there would be a closing on the land, BPP would still be involved after the closing, and BPP would be needed to refinance the balance sheet at closing with [$25 million]." (*Id.*).  It further alleges that "[b]ased on those representations, BPP continued to work diligently to find an investor."  (*Id.*).

In fact, however, according to the complaint, "Paskett, Hines, and Newman were conspiring against BPP to exclude BPP from the deal for their own benefit."  (*Id.* ¶ 49).  On April 13, Paskett registered FTW, LLC as a limited liability company in Arizona.  (*Id.* ¶ 50).[11] Two weeks later, on April 29, defendants Nopal and Golden Sands signed closing documents transferring the Arizona land and leaseholds to FTW.  (*Id.* ¶ 53).  At the same time, FTW's operating agreement was finalized.  (*Id.* ¶ 54).  According to the complaint, Paskett, Hines, and Newman "received a greater share of FTW than they would have for any proposal made with BPP," and "[t]hey were able to accomplish this only by excluding BPP from the transaction." (*Id.* ¶ 56).  Paskett allegedly "continued the ruse that BPP would be involved in a second stage of the transaction," and thus "BPP continued to work to find an arrangement for further investment" until the end of June 2015.  (*Id.* ¶¶ 57-59).

In summary, BPP alleges that "[d]efendants Newman, Paskett, and Hines, acting through entities that they controlled, implemented [a] scheme to exclude BPP from the transactions."  (*Id.* ¶ 52).

---

[11] The ownership structure of FTW, for the purpose of profit and loss calculations, was as follows:  Venture Group, LLC, 10.45%; Nopal, 12.5%; Cascade, 10.45%; and Stahl, 66.6%.  (*Id.*).  By contrast, the equity structure of FTW excluded any entities controlled by Newman:  Venture Group, LLC, 11.94%; Cascade Land Holdings, LLC, 11.94%; and Stahl, 76.11%.  (*Id.*).

II.  **Procedural History**

BPP filed the original complaint in this case on November 10, 2015.[12]  It asserts nine

claims:  breach of fiduciary duty against Paskett, Hines, Newman, Nopal, and Golden Sands

(Count One); breach of contract against Paskett (Count Two); breach of contract against Hines

(Count Three); breach of the implied covenant of good faith and fair dealing against Paskett

(Count Four); breach of the implied covenant of good faith and fair dealing against Hines (Count

Five); violation of Mass. Gen. Laws ch. 93A against Paskett (Count Six); civil conspiracy

against Paskett, Hines, Newman, Nopal, and Golden Sands (Count Seven); unjust enrichment

against Paskett and Hines (Count Eight); and fraud against Paskett (Count Nine).  It seeks,

among other relief, money damages, a constructive trust "over the assets of BPP held by

Defendants," and pre-judgment attachment of assets of the defendants.  (Am. Compl. at 7).

Defendant Paskett has moved to dismiss Count Six under Fed. R. Civ. P. 12(b)(6), and

has also moved to dismiss the entire action for improper venue under to Fed R. Civ. P. 12(b)(3),

or to transfer the case to the District of Arizona under 28 U.S.C. § 1404(a).  Defendant Hines has

moved to dismiss the entire action for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2)

and improper venue under Fed. R. Civ. P. 12(b)(3), or, in the alternative, to transfer the case to

Arizona pursuant to § 1404(a).  Defendants Newman, Nopal and Golden Sands have moved to

dismiss the entire action for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

III.  **Mass. Gen. Laws ch. 93A (Count Six)**

Paskett has moved to dismiss Count Six of the complaint, which asserts a claim under

Mass. Gen. Laws ch. 93A for unfair and deceptive trade practices.  Paskett is the only defendant

named in Count Six.

---

[12] It later filed an amended complaint clarifying the existence of subject-matter jurisdiction.

The Supreme Judicial Court has construed Chapter 93A as applying to actions that arise "between discrete, independent business entities," but not to transactions between joint venturers or fiduciaries within a single company. *Szalla v. Locke*, 421 Mass. 448, 451 (1995); *see also Zimmerman v. Bogoff*, 402 Mass. 650, 662 (1988) (dispute between owners of a close corporation held to be "principally private in nature," and therefore did "not fall within the purview of" Chapter 93A); *Riseman v. Orion Research, Inc.*, 394 Mass. 311, 313-14 (1985) (Chapter 93A does not apply to disputes between corporate shareholders and the corporation concerning the internal governance of the corporation).

The complaint expressly alleges that "Defendant Paskett and BPP entered into a partnership and joint venture, which they memorialized in [the Letter Agreement] . . . ." (Am. Compl. ¶ 25). The substance of BPP's claim against Paskett is that he failed to follow through on his obligations under the joint venture agreement. Indeed, Count One alleges a breach of fiduciary duty by Paskett (and others) that he owed to BPP as a joint venturer.

It is well-established that Chapter 93A does not apply to a dispute of that nature. *Cf. Szalla*, 421 Mass. at 452 ("The association between the plaintiff and the defendant in the interests of forming a business venture together is not the kind of commercial transaction regulated by the statute."). Paskett and BPP were allegedly partners in a business venture, and the dispute concerns their respective rights and relationships in that venture. Count Six will therefore be dismissed.

## IV.    Motions to Dismiss for Lack of Personal Jurisdiction

Defendants Hines, Newman, Nopal, and Golden Sands have all moved to dismiss the case for lack of personal jurisdiction under Rule 12(b)(2).

8

**A.** **Standard of Review**

The plaintiff bears the burden of establishing that the court has personal jurisdiction over defendants. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002). Upon a motion to dismiss under Rule 12(b)(2), the court may employ several standards to assess whether plaintiff has carried this burden: the "*prima facie*" standard; the "preponderance-of-the-evidence" standard; or the "likelihood" standard. *See id.* at 50-51, n. 5; *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145-47 (1st Cir. 1995). Where, as here, the court is called to make this assessment without first holding an evidentiary hearing, the *prima facie* standard is applied. *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). Under this standard, the court takes the plaintiffs "properly documented evidentiary proffers as true and construe[s] them in the light most favorable to [plaintiff's] jurisdictional claim." *A Corp. v. All American Plumbing, Inc.*, 812 F.3d 54, 57 (1st Cir. 2016) (citing *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008). A plaintiff may not "rely on unsupported allegations in [its] pleadings." *A Corp.*, 812 F.3d at 54 (internal quotations omitted). "Rather, [plaintiff] must put forward 'evidence of specific facts' to demonstrate that jurisdiction exists." *Id.* (quoting *Foster-Miller*, 46 F.3d at 145).

**B.** **Defendant Hines**

"Permissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere." *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 17 (1st Cir. 2009) (quoting 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3803.1 (3d ed. 1998)). The Letter Agreement between Paskett (as a representative of GSJV) and BPP clearly states that "[t]his Agreement is subject to the laws of *and is enforceable in* the

Commonwealth of Massachusetts . . . ."  (Pl. Opp. Ex. 1 at 2) (emphasis added).  The question, then, is whether Hines can fairly be considered a party to the agreement.

Hines did not sign the agreement, nor is he listed in the agreement as a party.  (*See id.* at 1).  Even so, a non-party may be bound by a forum-selection clause where that party is "closely related to the dispute such that it becomes foreseeable that it will be bound."  *Barletta Heavy Div., Inc. v. Erie Interstate Contractors, Inc.*, 677 F. Supp. 2d 373, 379 (D. Mass. 2009) (citing *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)).

The complaint alleges that Paskett and Hines "owned and controlled" GSJV, the entity (formal or informal) on whose behalf Paskett signed the Letter Agreement.  (Am. Compl. ¶ 23).  The amended complaint also alleges that Hines made a "good faith payment" of $350,000 on behalf of GSJV in order to purchase the Nopal lands and assume the leases from defendants Golden Sands and Nopal Cactus.  (*Id.*).[13]  BPP further contends that Paskett "represented Hines with respect to his dealings with BPP" and that Hines was, in fact, "recognized as a fully active participant in the partnership and joint venture by all parties."  (*Id.* ¶ 30).  According to BPP, Hines "did not want his name listed on the Agreement because he was in the process of a divorce."  (*Id.*).

Hines generally disputes BPP's allegations, and denies that Paskett was his agent with respect to the Letter Agreement.  (Hines Aff. ¶ 11).  He does not, however, specifically dispute BPP's allegation that he was in fact a part-owner of GSJV or that he made the good-faith payment on GSJV's behalf.

It may be the case that Hines is sufficiently related to Paskett and GSJV that enforcement of the forum-selection clause against Hines would be appropriate.  *Cf. KTV Media Int'l, Inc. v.*

---

[13] That allegation aligns in part with defendant Newman's affidavit, which states that Newman received a $350,000 deposit from GSJV.  (Newman Aff. ¶ 5).

*Galaxy Grp., LA LLC*, 812 F. Supp. 2d 377, 387 (S.D.N.Y. 2011) (enforcing forum-selection clause against non-signatory plaintiff where plaintiff's claims against that defendant relied on co-defendant and signatory's alleged breach of the agreement containing the forum-selection clause).  If so, and if the factual allegations in the complaint and the parties' affidavits are construed in the light most favorable to BPP, BPP would have met its burden to show Hines subjected himself to jurisdiction in Massachusetts through the GSJV-BPP Letter Agreement.  At best, however, the exercise of personal jurisdiction over Hines would be a very close call, and it is likely that the resolution of the issue requires further development of the evidence.  Because, as set forth below, the Court will transfer venue to Arizona, it need not resolve the issue, and will deny Hines's motion to dismiss for lack of personal jurisdiction as moot.

### C.    Defendants Newman, Nopal, and Golden Sands

The remaining defendants are Newman, Nopal, and Golden Sands.[14]  There is no allegation that any of those defendants were parties to the Letter Agreement.  Thus, to establish its jurisdictional claim against those defendants, BPP must meet the requirements of both the Massachusetts long-arm statute and the due process clause of the Fourteenth Amendment.  *See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 2016 WL 3147645, at *3 (1st Cir. June 6, 2016).[15]

---

[14] The amended complaint alleges that Newman is the manager of Nopal and the general partner of Golden Sands.  Am. Compl. ¶¶ 8-9.  Accordingly, the Court will conduct the personal jurisdiction analysis of those defendants together.

[15] Although many courts in this circuit have often proceeded on the assumption that the two standards were co-extensive—and that a court may therefore bypass the question of jurisdiction under the long-arm statute and move directly to the constitutional analysis—recent First Circuit case law indicates that such an assumption is incorrect.  *See Baskin-Robbins*, 2016 WL 3147645, at *3 (the assertion of personal jurisdiction must "satisfy the requirements of both the Due Process Clause of the federal Constitution and the Massachusetts long-arm statute," and the "requirements imposed by the [statute]," although "quite similar," are "not completely congruent with" the constitutional requirements); *see also Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 3-4 (1st Cir. 2016) ("Recently . . . we have suggested that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution."); *A Corp.*, 812 F.3d at 59 ("[T]he Commonwealth's long-arm statute may impose limits on the exercise of personal jurisdiction 'more restrictive' than those required by

BPP asserts that jurisdiction over all defendants is proper under Mass. Gen. Laws ch.

223A, § 3.  The relevant portions of that statute provide:

> A court may exercise personal jurisdiction over a person, who acts directly or by
> an agent, as to a cause of action in law or equity arising from the person's
>
> > (a) transacting any business in this commonwealth;
> >
> > (b) contracting to supply services or things in this commonwealth;
> >
> > (c) causing tortious injury by an act or omission in this commonwealth;
> >
> > (d) causing tortious injury in this commonwealth by an act or omission
> > outside this commonwealth if he regularly does or solicits business, or
> > engages in any other persistent course of conduct, or derives substantial
> > revenue from goods used or consumed or services rendered, in this
> > commonwealth . . .

Mass. Gen. Laws ch. 223A, § 3.

Section 3(a) allows for personal jurisdiction over persons "transacting any business in

this commonwealth." *Id.*  In construing Section 3(a), courts must "focus on 'whether the

defendant[s] attempted to participate in the commonwealth's economic life.'"  *Cossart*, 804 F.3d

at 18 (quoting *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d

1080, 1087 (1st Cir. 1992)).  In addition, in order to meet Section 3's "arising from"

requirement, the transacted business must be a "but for cause of the harm alleged in the claim."

*See Cossart*, 804 F.3d at 18.

BPP asserts by affidavit that Newman "had teleconferences with BPP while BPP was in

Massachusetts" and "negotiate[d] terms of the [deal] via email, phone and text messages."

(Hines Aff. ¶ 7).   However, where the record does not include any detail as to such contacts,

they "cannot be said to amount to anything more than incidental communications," and therefore

the Constitution."); *Cossart v. United Excel Corp.*, 804 F.3d 13, 18 (1st Cir. 2015) ("The requirements of the
Massachusetts long-arm statute are similar to—although not necessarily the same as—those imposed by the Due
Process Clause.").

do not support jurisdiction under Section 3(a).  *See Roberts v. Legendary Marine Sales*, 447 Mass. 860, 863-64, n.3 (2006).[16]  The only *specific* allegations as to Newman are that he (1) participated in a conference call with BPP on March 27, 2015, and (2) met with BPP on April 7, 2015.  Newman contends that the call was initiated by BPP, and that the meeting took place in Phoenix, Arizona.  (Newman Aff. ¶¶ 7, 10).

Although the requirements of Section 3(a) are "not especially rigorous," substantial doubt exists as to whether BPP has met its burden of demonstrating that Newman, Nopal, or Golden Sands transacted business in Massachusetts.  In any event, however, it is clear that those defendants' meager contacts with BPP in Massachusetts were not the "but for" cause of BPP's claimed harm.  Even under a liberal reading of the complaint, BPP has asserted claims against Newman, Nopal, and Golden Sands---not for representations or omissions those defendants made to BPP during their alleged contacts with BPP in Massachusetts---but for defendants' conduct in effectively acting as accessories to Paskett and Hines breaching *their* agreement with BPP.  Thus, BPP's claims against Newman, Nopal, and Golden Sands arise solely out of those defendants' alleged side dealings with Hines and Paskett—all of which occurred outside of Massachusetts—and not out of any business Newman, Nopal, or Golden Sands may have transacted in Massachusetts.  Accordingly, Section 3(a) does not provide an adequate basis for jurisdiction under the long-arm statute.[17]

Section 3(d) of the long-arm statute allows for jurisdiction over persons "causing tortious

---

[16] Newman also asserts that all his contacts with BPP were initiated by BPP.  (Newman Aff. ¶ 16).

[17] For the same reason, it is unlikely that BPP's factual allegations, even if supported by more specific evidence, would be sufficient to meet the "relatedness" element of the constitutional analysis under the Due Process Clause.  *See United Elec.*, 960 F.2d at 1087 ("[Section 3's] relatedness requirement mirrors a key constitutional requirement for the exercise of specific jurisdiction [under the Due Process Clause].").

injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engage in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." Although section 3(d) provides for jurisdiction in cases where the injury-causing acts occur outside of Massachusetts, there are no allegations here that Newman, Nopal, or Golden Sands "regularly" or "persistently" engages in conduct in Massachusetts. *Cf. Roberts*, 447 Mass. at 865 (no "persistent course of conduct" where boat sale at issue was "only transaction the defendant ever entered into with a Massachusetts resident."). Accordingly, that section, too, is not a proper basis for jurisdiction.

That leaves Section 3(c) of the statute, which provides for jurisdiction over persons "causing tortious injury by an act or omission in this commonwealth." Mass. Gen. Laws ch. 260, § 3(c). BPP asserts claims against Newman, Nopal, and Golden Sands for breach of fiduciary duty (Count One) and civil conspiracy (Count Seven). The amended complaint alleges that defendants Paskett and Hines breached their fiduciary duty to BPP by entering into an agreement concerning the Arizona Lands that did not include BPP. Am. Compl. ¶ 64. The amended complaint further alleges that Newman, Nopal, and Golden Sands "provided substantial assistance and encouragement" and "executed transactions in furtherance of the breach of the fiduciary duties of Defendants Paskett and Hines." *Id.* ¶ 69.

There is no dispute that the agreement with Stahl was formed outside of Massachusetts. And it is equally clear that any "assistance and encouragement" and any transactions allegedly entered into by Newman, Nopal, and Golden Sands occurred entirely outside of Massachusetts. Likewise, defendants' "agreement in April 2015 to conspire against BPP" that forms the basis of the civil conspiracy claim also occurred outside of the Commonwealth. *See id.* ¶ 108. Finally,

Newman, Nopal, and Golden Sands had no fiduciary duty to BPP, did not execute the BPP agreement, and are not alleged to have been a silent partner to that agreement.

Thus, the conduct that caused BPP's injuries occurred entirely outside of Massachusetts, and accordingly Section 3(c) does not provide a proper basis for jurisdiction under the long-arm statute.  BPP contends that jurisdiction in Massachusetts is nonetheless appropriate under the theory that defendants' tortious conduct was "expressly aimed" at the Commonwealth, and that the effects of that conduct was felt in Massachusetts.  *See Calder v. Jones*, 465 U.S. 783, 790 (1984).  Although that theory may comport with constitutional requirements, it is inconsistent with the text of Section 3(c).[18]

"Jurisdiction is conferred only 'when some basis for jurisdiction enumerated in the [Massachusetts long-arm] statute has been established.'"  *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994) (quoting *Good Hope Indus. Inc. v. Ryder Scott Co.*, 378 Mass. 1, 6 (1979)).  BPP has not made a sufficient showing that one of the specific requirements of the Massachusetts long-arm statute applies here and there appears to be no basis for the exercise of personal jurisdiction over Newman, Nopal, or Golden Sands in Massachusetts.  However, because the Court will transfer venue to Arizona, it will, as a formal matter, deny defendants' motion to dismiss for lack of personal jurisdiction as moot.

## V.   <u>Motions to Dismiss for Improper Venue</u>

Defendants Paskett and Hines have moved to dismiss the action for improper venue under Rule 12(b)(3).  "In ruling on a motion filed under Rule 12(b)(3), '[a]ll well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless

---

[18] Again, the First Circuit has recently noted that the assertion of personal jurisdiction must "satisfy the requirements of both the Due Process Clause of the federal Constitution and the Massachusetts long-arm statute," and that the "requirements imposed by the [statute]," although "quite similar," are "not completely congruent with" the constitutional requirements.  *Baskin-Robbins*, 2016 WL 3147645 at *3.

contradicted by the defendant's affidavits.  A district court may examine facts outside the

complaint to determine whether its venue is proper.'"  *Turnley v. Banc of Am. Inv. Servs., Inc.*,

576 F. Supp. 2d 204, 211 (D. Mass. 2008) (quoting 5B Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure § 1352 (3d ed. 2004)).

 Here, venue is clearly proper in Massachusetts with respect to Paskett, based on the

permissive forum-selection clause contained in the Letter Agreement.  Nonetheless, because the

Court will transfer venue to the District of Arizona under 28 U.S.C. § 1404(a), defendants'

motions to dismiss for improper venue will be denied as moot.

## VI. <u>Motions for Transfer of Venue</u>

 In the alternative, defendants Paskett and Hines have moved to transfer this case to the

District of Arizona pursuant to 28 U.S.C. § 1404(a).  Title 28 U.S.C. § 1404(a) provides that,

"[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought."  As a

threshold matter, the Court must determine whether this action could have properly been brought

in the proposed transferee court.  After this initial determination, the Court must undertake an

"individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v.*

*Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).

 The venue statute, 28 U.S.C. § 1391(b), provides as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship
> may . . . be brought only in (1) a judicial district where any defendant resides, if
> all defendants reside in the same State, (2) a judicial district in which a substantial
> part of the events or omissions giving rise to the claim occurred, or a substantial
> part of property that is the subject of the action is situated, or (3) a judicial district
> in which any defendant is subject to personal jurisdiction at the time the action is
> commenced, if there is no district in which the action may otherwise be brought.

Here, venue clearly would be appropriate in the District of Arizona under § 1391(b)(2).  At a

minimum, a substantial part of the events giving rise to the claim occurred in that district.[19]  This action therefore could have been properly brought in the District of Arizona in the first instance.

"The plaintiff's forum choice 'should rarely be disturbed'; thus, 'the moving defendant . . . must establish that the private and public interests weigh heavily on the side of trial in the foreign forum.'"  *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991) (internal quotations and citations omitted).  "The defendants have the burden to establish that, on balance, the interests of justice and convenience weigh heavily in favor of transfer."  *Systemation, Inc. v. Engel Indus.*, 992 F. Supp. 58, 64 (D. Mass. 1997) (citations omitted).  Finally, "[w]here the contract between the parties . . . contains a forum-selection clause, the clause will be a significant factor that figures centrally in the District Court's calculus."  *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) (internal quotations omitted).

Those factors, however, must be balanced in this case against countervailing considerations.  It is true, of course, that plaintiff selected the forum, its home state of Massachusetts.  But just as plaintiff made its choice of jurisdictions, so too plaintiff made its choice of claims and defendants.  It elected to assert claims against three defendants (Newman, Nopal, and Golden Sands) as to whom personal jurisdiction is lacking, and one (Hines) as to whom the jurisdictional claim is wafer-thin at best.  The choice for the Court is thus not simply between litigating this matter in Massachusetts and litigating it in Arizona; rather, it is between litigating part of the case in Massachusetts (against one, or possibly two, defendants) and litigating all of it in Arizona (against all five defendants).  Under the circumstances, the principle

---

[19] In determining whether the requirements of subsection (2) are met, courts must take a "holistic view of the acts underlying a claim," and "do not focus on the actions of one party."  *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009) (quotations omitted).

that plaintiff's choice of forum should be rarely disturbed is substantially offset by the principle that disputes should normally be resolved in a single proceeding.  *See, e.g., Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 25-27 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").

In addition to the foregoing issues, courts in this district ordinarily consider the following factors in determining the most appropriate forum under § 1404(a):  (1) the relative convenience of the parties, (2) the convenience of the witnesses and location of documents, (3) any connection between the forum and the issues, (4) the law to be applied, and (5) the state or public interests at stake.  *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 17 (D. Mass. 2002).

### A. <u>Relative Convenience of Parties</u>

Massachusetts is undoubtedly a more convenient forum for BPP, which maintains its principal place of business in Boston.  Defendants, however, all reside in western states.  Defendant Paskett resides in Idaho; defendant Hines resides in Washington state; defendant Newman resides in Arizona; and defendants Nopal and Golden Sands are based in Arizona.

On balance, a transfer to Arizona would reduce the total inconvenience to the parties.  Although a transfer would require plaintiff's representatives to travel to Arizona, that added inconvenience is offset by the fact that defendants Newman, Nopal, and Golden Sands are all located in Arizona.  In addition, Arizona is more convenient for defendants Paskett and Hines than Massachusetts.  Thus, this is not a case where the effect of a transfer "is merely to shift the inconvenience from one party to the other."  *Sigros v. Walt Disney World Co.*, 129 F. Supp. 2d 56, 71 (D. Mass. 2001).  Litigating the case in the District of Arizona would therefore be

somewhat more convenient for all of the parties as opposed to litigation in Massachusetts.

**B.     Convenience of Witnesses and Location of Documents**

The convenience of expected witnesses is "probably the most important factor, and the factor most frequently mentioned." *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991) (citations omitted).  Courts must look at "the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify." *Id.*

In analyzing this factor, the court is ordinarily concerned with the location of witnesses who are not parties or employees of the parties.  *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3851 ("[T]he convenience of witnesses who are employees of a party is given less weight by the court because that party can obtain their presence at trial.") (citing cases); *Sigros v. Walt Disney World Co.*, 129 F. Supp. 2d 56, 71 (D. Mass. 2001) ("If, however, a court order or the persuasion of an employer who is a party to the action can secure the appearance of witnesses regardless of the location of forum, that factor diminishes in importance.").

Defendants have identified several potential non-party witnesses named in the complaint for whom appearing in Arizona would be more convenient than Massachusetts, including members of the Stahl Hutterian Brethren (the entity that ultimately leased the Nopal lands), and John Boley and Doug Larson (who were named as parties to the Letter Agreement with Paskett, but are not named as defendants).  In response, BPP has not identified any non-party witnesses who would be inconvenienced more by litigation in Arizona than in Massachusetts, or any non-party witnesses who could be compelled to testify in Massachusetts but not Arizona.[20]  The

---

[20] Furthermore, if the case were to remain in Massachusetts, the claims against Newman would be dismissed for lack of personal jurisdiction, and he would become an additional potential non-party witness.

convenience of potential witnesses therefore weighs in favor of a transfer to Arizona.[21]

### C.    Connection between the Forum and the Issues

Here, the only connections between Massachusetts and this action are plaintiff's headquarters and the forum-selection clause.  In contrast, the events at the heart of the complaint appear to have occurred largely, if not exclusively, in Arizona, where the Nopal Lands are located.  Accordingly, this factor also weighs somewhat in favor of transfer to the District of Arizona.

### D.    The Law to be Applied

Although the issue has not been fully briefed, it appears to be at least equally likely that Arizona law will apply to this action as Massachusetts law.  Of course, the United States District Court for the District of Arizona has more experience applying Arizona tort and contract law than a district court in Massachusetts, and therefore the fact that Arizona law may apply favors hearing the case in Arizona.  On the other hand, the Court is confident that it is also capable of applying the common law of another state.  *See, e.g.*, *Hipage Co. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 613 (E.D. Va. 2008) ("Even assuming that Virginia law would apply to the action in Illinois, the U.S. District Court for the Central District of Illinois is competent to apply Virginia law."); *cf. Atlas Oil Co. v. Micro-Design, Inc.*, 2009 WL 411763, at *5 (E.D. Mich. Feb. 17, 2009) ("Courts usually do not consider the application of foreign law to be an important factor in a § 1404 transfer analysis.").  Still, on balance, this factor also weighs slightly in favor of a transfer to the District of Arizona.

---

[21] While the location of records and documents relevant to the litigation is a factor that a court should consider, its importance has lessened over time because of the ease with which that information can now be transported to another jurisdiction.  *See* 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3853 ("[S]ince most records and documents now can be transported easily or exist in miniaturized or electronic form . . . their location is entitled to little weight. This is particularly true with the development of photoduplication, facsimile transmission, the Internet, and the easy availability, excellent reproducibility, and relatively low cost of hard and electronic copies.").

**E.**     **Public Interests at Stake**

Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 n.6 (2013) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).   Because the parties have not identified any meaningful public interest at stake here that would be better protected in one forum than another, this factor is neutral.

**F.**     **Conclusion**

Two factors—plaintiff's choice of forum and the forum-selection clause in the Letter Agreement—clearly mitigate in favor of denying a transfer of venue.  However, the fact that the clause is permissive, and that it applies to only one, or possibly two, of the five named defendants, substantially lessens the significance of those factors in the transfer calculus.  Most significantly, BPP chose to sue in Massachusetts multiple defendants for whom the likelihood of personal jurisdiction was non-existent or tenuous, at best.  If the case is litigated here, it cannot go forward against all of the defendants plaintiff chose to sue.  In particular, the lack of personal jurisdiction over Newman, Nopal, and Golden Sands is a compelling reason in favor of transferring the case to Arizona.  *See, e.g.*, *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 857 (11th Cir. 1988) ("Given the judicial system's great concern with the efficient conduct of complex litigation, an important consideration in deciding appropriate venue is whether a forum can meet the personal jurisdiction and venue requirements for most or all of the defendants in a multi-party lawsuit."); *Get In Shape Franchise, Inc. v. TFL Fishers, LLC*, 2016 WL 951107, at *22 (D. Mass. Mar. 9, 2016) ("[T]ransfer is appropriate where there is a

likelihood of substantial overlap in issues between two lawsuits pending in two different federal

courts, particularly if the transferring court lacks personal jurisdiction over actual or likely

defendants."); *Aphena Pharma Sols.-Maryland LLC v. BioZone Labs., Inc.*, 912 F. Supp. 2d 309,

320-21 (D. Md. 2012) (interests of judicial economy best served by transferring case where

personal jurisdiction would be present over all defendants); *Animation Station, Ltd. v. Chicago

Bulls, LP*, 992 F. Supp. 382, 385 (S.D.N.Y. 1998) ("substantiality" of defendant's motion to

dismiss for lack of personal jurisdiction "reinforces the Court in its determination to transfer").[22]

The other factors the Court must consider also weigh in favor of a transfer to the District

of Arizona, including the relative convenience of witnesses and the connection between the

respective forums and the issues to be litigated.  Under the circumstances, and notwithstanding

plaintiff's choice of forum and the permissive forum-selection clause, transfer of this action is

appropriate.

Accordingly, the Court finds that the transfer of this case to the District of Arizona

pursuant to § 1404(a) is in the interests of justice.  Defendants' motion to transfer will therefore

be granted.

**VII.    Conclusion**

For the foregoing reasons:

1.      Defendant Paskett's motion to dismiss Count Six is GRANTED.

2.      The motions of defendants Paskett and Hines to dismiss pursuant to Fed. R. Civ.

---

[22] A court may transfer an action even though there is no personal jurisdiction over one or more defendants. *See Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 573 F. Supp. 1106, 1115 (D. Mass. 1983), *aff'd*, 743 F.2d 947 (1st Cir. 1984) ("The court has the authority to transfer this action even though there is no personal jurisdiction over defendant Guerrero and venue is improper as to defendants Keyes and Wool Masters.") (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962)).  At oral argument, counsel for Newman, Nopal, and Golden Sands indicated that those defendants did not object to a transfer of the case to Arizona.

P. 12(b)(3) for improper venue are DENIED as moot.

3.     The motion of defendant Hines to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction is DENIED as moot.

4.     The motion of defendants Newman, Nopal, and Golden Sands to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction is DENIED as moot.

5.     The motions of defendants to transfer venue to the U.S. District Court for the District of Arizona pursuant to 28 U.S.C. § 1404(a) are GRANTED.

**So Ordered.**

/s/  F. Dennis Saylor
F. Dennis Saylor IV
Dated: July 8, 2016               United States District Judge